We'll hear argument next in Case 11-1450, the Standard Fire Insurance Company v. Knowles. Mr. Boutros. Mr. Chief Justice, and may it please the Court, Congress enacted the Class Action Fairness Act of 2005, CAFA, to expand federal diversity jurisdiction and to protect defendants and absent class members against the kind of state court class action abuses that are occurring in Miller County, Arkansas. Congress directed that in calculating the amount in controversy, courts shall aggregate the claims of the individual class members. That's 28 U.S.C. Section 1332d6. It's quoted in full at page 2 of our blue brief. Congress's expressed focus on the claims of the individual class members in the text of the statute, rather than on the amount being sought by the would-be class representative, is dispositive of the question presented and requires reversal in this case. Roberts Would your position be the same if the issue were not the amount sought, but rather the substantive claims? Say there are two different claims the class member or class could raise. One would yield damages of $4,900,000. The other would yield damages of $10 million. Do you have the same objection in a case in which the prospective representative only pleads the first claim? Shanmugam Not necessarily, Your Honor. We're not arguing that here. There are cases that this Court has decided, going back to Berry v. Edmonds in 1886, where there are allegations in a complaint that might, for example, yield a punitive damage claim, but it's not explicitly pled. And the courts then look and say punitive damages could be recovered here, and say the amount in controversy clearly exceeds the necessary amount. But we're not saying that in every case the courts need to look through and see every claim that could be pled.  Well, but you do seem to have a difficulty with your position about how far it goes. You make the point in your briefs about the statute of limitations question. In other words, it's not just how much they claim, but where they decide to cut off the statute of limitations and so forth. It seems to me that it's a bit of a slippery slope if you start saying we're going to look at what the class could recover in deciding whether or not, not simply whether or not this representative is adequate, but whether or not it's below or above or below $5 million. That's really how it's been done, Your Honor, from day one under the traditional diversity statute. The courts look and see what's the maximum amount the plaintiff on his or her best day could recover based on the factual allegations in the complaint and the causes of action that could arise from the factual allegations. Scalia, but under the traditional, you surely don't want us to apply the rules of the traditional diversity statute to this case, because it's clear that under the traditional diversity statute, you can waive excessive damages, right? That's correct, Your Honor. The individual. So you don't want us to apply that rule here? I don't want you to apply that rule, Your Honor, because that rule applies to the individual who brings his own case in court and can say, I want to come into court and collect less than the amount that would give Federal jurisdiction. It's much different when Mr. Knowles has come to court and said, I want to represent these other individuals in our case. Sotomayor, why doesn't the normal class certification process protect adequately the absent class members? First of all, counsel has to prove he or she is adequate. So doesn't that mean that if they enter a stipulation that's grossly unfair to the class, that the judge is not going to certify that case? It wouldn't protect it – protect from the problems and abuses that Congress was concerned about, Your Honor, and that are occurring here. You haven't answered. If the court finds the stipulation inadequate for the class, is that class going to be certified? It could be, Your Honor. Another class representative could come in and could seek more than $5 million. That's fine. And then they would get removed to the Federal court, which is what the statute was intended to do. But what Congress was concerned about, and the text of the statute and the Senate report make this very clear, was all the abuses that occur in the interim. Discovery that has nothing to do with the case. The discovery here goes back 10 years. The – this case – Sotomayor, well, discovery vis-à-vis the certification of the class is going to happen anyway. My point is that much of your argument in your brief is centered around binding the absent class members. What I'm getting to is that if the stipulation is grossly unfair, there may not be a class at all, or the plaintiffs who have claims greater than those in the aggregate might opt – will get notice and opt out. And there's due process challenges if a settlement is entered that's so grossly unfair that it violates due process. So I don't know why the process itself doesn't protect the interests of Congress. Your Honor, excuse me. The Congress was very concerned that cases were being kept in the State court through abuses and manipulations of the amount in controversy. It's very clear in the Senate report Congress talks about this because, for example, in this case, the defendants can never get a class certification hearing in Miller County. They can never get a ruling on the merits. And in the meantime, the kind of abuses that Congress was concerned about, the lack of the Rule 23 protections, the application of those standards to protect class members. Kagan Well, Mr. Boutrous, you say what Congress is concerned about. You point to the Senate report. You know, usually we look to the text, and the text makes very clear that Congress was concerned about many things, and it did many things. It got – it really – it raised the matter in controversy threshold. It eliminated the Zahn anti-aggregation rule. It eliminated the complete diversity requirement. It eliminated the one-year limit on removal. Here's one thing it didn't eliminate. It didn't eliminate the St. Paul master-of-year complaint rule. So I guess where in the text do you see this? You point to clam, the word clam. Is that the only thing that you're resting on in the text? Boutrous Your Honor, I think the text does take away the St. Paul rule that an individual can control what he seeks and go where he desires and do what he wants, or she, because it points to the claims of the individual class members. In the text, Congress could have said that. Kagan Well, if I said to you, Mr. Boutrous, is your claim for over $100,000, what would you think I mean? Would you think I mean some sort of abstract version of the best claim you could bring, or would you think I mean what I demanded, what I asked for? Boutrous Well, Your Honor, I would think that I would answer you that it's worth as much as I can possibly obtain in court if I was seeking to adequately represent the class. But in terms of valuing the claims, Your Honor, I think Kagan But you think that the word clam is not when you say Joe made a claim for $100,000. A claim is not what he asked for, but is instead some kind of law professor's view of what the best thing that he could have asked for? Boutrous Your Honor, we've cited the Tohono O'odham Nation case where the Court interpreted the word claim and said when a statute uses the word claim regarding claims that have not been brought, it's the operative facts and the right to recovery, not the demand. That's exactly what we have here. Ginsburg Mr. Boutrous, I thought, at least as an alternative argument, you're saying the statute itself is silent. It doesn't deal with this question of amount and controversy. However, the individual, the named plaintiff, who has said I'm not going to seek more than $5 million, cannot speak for the members of the class who are absent. He can't stipulate that they will take under $5,000. I thought that was a central part of your argument, not based on the statute itself, but on the notion that a named plaintiff, unless and until he is certified to represent the class, doesn't represent them. He can represent himself, but he can't find the people who have not been certified as part of a class. I thought that was part of your argument. Boutrous Yes, Justice Ginsburg, that's absolutely right. And because the statute focuses on the claims of the individual class members, Mr. Knowles has no power to affect those claims. He's not the master. Kagan But he doesn't have power to affect those claims before the certification has happened. Boutrous Exactly. Kagan Before the certification has happened, they can do whatever they want. They can go bring their own claim for $6 million. And that's why Smith v. Bayer, which you so heavily rely on, does not have much to do with this case. Smith v. Bayer is the question of can an absent person be precluded by a judgment when that person was not part of a class? There's no question that this person is going to be precluded. This person can go do whatever he or she wants before class certification and judgment. Boutrous Your Honor, that's — Smith v. Bayer says the plaintiff can't find the class. Plaintiffs have now conceded that. So what we have here, the district court found an uncontradicted record that the claims of the individual class members exceed $5 million. That means there's Federal jurisdiction. Back to Justice Ginsburg's point, that is exactly our point, Your Honor. A named plaintiff cannot affect or jeopardize or undermine the claims of absent individuals. Breyer This is what I — could you go back to Justice Kagan's first question? What I was looking at, the words of the statute. And if I look at 1332, which has been on the books a long time, it says, The district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests of cost and et cetera. Okay? Then I look here and it says the district court shall have jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5 million, exclusive interests of cost, et cetera. Okay? So the words seem identical. Now, in respect to the first, we know that a lawyer can file a binding stipulation that says, I don't care what this is about, I'm not asking for more than $75,000, and the Federal court does not have jurisdiction. Given that's true in the first statute, and given that the second statute is almost identically worded, at least in that part, why can't he do the same thing with the $5 million? And it can't be the words I quoted that stop him from doing it. So what is the word that stops him from doing it? Shanmugamer, it's the other part that's extremely important, section 1332d6. You were quoting from section 1332d2. Unlike section 1332a, Congress in CAFA explicitly added subsection 6, which says in any class action the claims of the individual class members shall be aggregated to determine. Breyer, but what that looks like, shall be aggregated, again, from the language, is it simply to make certain that Zond does not require the individual thing to approach. It has to count. In other words, you aggregate rather than just looking at the individual members, which is Zond, which has nothing to do with the issue before us. Well, Justice Breyer, Congress could have said we're just getting rid of Zond, or it could have said the aggregate amount being sought by the named plaintiff is going to control. But it took that approach. No, they rarely pass a statute that says let's just get rid of case X. Normally, they look to the holding of case X, and then they pass the statute that says the opposite. So the holding of Zond was that you could not aggregate the individual members' claims in a class. So to get rid of Zond, what we do is we pass a statute that says you can aggregate. And indeed, nobody objects here to the aggregation. It's the total amount of the claims being limited by a stipulation is the issue here, and that's why I had trouble finding your argument in the word aggregation. But it's really not the word aggregation, Your Honor. It's the word individual, and it's the word claims. If Congress had done what you were suggesting, Justice Breyer, it could have said the aggregate amount being sought by the named plaintiff, or the total amount, or the demand of the plaintiff. In the Venue Clarification Act, which was passed in 2011, which applies to 1332a, Congress said the sum demanded will control. But here, to protect the legitimate claims, Congress, the findings, I urge the Court to do the same thing. But Mr. Boutrous, I mean, that form of argument Congress could have said does seem to me to be much worse for your position. If Congress had wanted to get rid of the St. Paul master-of-year complaint rule, it could have said we're getting rid of the St. Paul master-of-year complaint rule. But you're trying to find it in a provision which is really an anti-Zond provision, not an anti-St. Paul provision. Your Honor, that really goes to the fundamental issue of what a class action is. If Mr. Knowles had come into court himself, on behalf of himself, and St. Paul, the money quote, if you will, in St. Paul says if he desires to go to State court, he can limit his recovery.  Kagan. Kagan. Kagan. But this does get back to the Chief Justice's question, because there are a thousand ways in which we let the named plaintiff prior to certification construct a case, and then we ask, as Justice Sotomayor said later, we ask, is the way he's constructed a case adequate or not, and we allow him to go forward or not based on that. But he gets to decide whether to seek damages, he gets to at all, or, you know, whether he only can seek injunctive relief. He gets to decide which claims to bring, trespass or negligence. He gets to decide how many years' worth to ask for. He gets to decide which defendants to sue. All of these things are going to have an effect on the amount that's being asked for, and yet in all of these ways we allow, or maybe you're telling me no. Do we stop the named plaintiff from doing all of those things, too? We don't stop them from doing all of those things, Your Honor, and there are certain things. We agree that the complaint controls a great deal, the factual allegations. Ginsburg. What about specifically the question that the Chief asked about time? You did argue in the district court that these plaintiffs could have specified a 5-year time period, in which case it would be clear that the amount in controversy was satisfied, but instead they took a 2-year period. Can we take that also into account in determining the amount in controversy, that the complaint could have been enlarged to include 5 years instead of 2 years? Your Honor, I believe you could, and I believe the Court's decision in Hertz said that if there's a sign of manipulation that is meant to thwart jurisdiction or affect jurisdiction, the Court can look through that to look to competent proof of what the actual facts are. And I think that what has happened here is the plaintiff's lawyers, in addition to these stipulations, they're slicing and dicing the classes up into pieces to thwart jurisdiction and manipulate jurisdiction. Roberts, your approach leads to particularly perverse results. You're at the position of arguing that, you know, they're only seeking less than $5 million, but we're responsible for a lot more damage than that. And, of course, you don't concede it, but you do say, you know, if, in fact, reliable, the damages are going to be a lot greater. Could that — I assume that admission could be used against you under principles of judicial estoppel. It's an unusual position to be in, Your Honor. It's not quite what we're arguing. We're arguing that under the rules for judging the amount in controversy, that this Court has enforced, the lower courts have enforced these for hundreds of years. It's that you look at the complaint and say, what's the maximum amount the plaintiff can get on their best day under the claims they've pled based on the facts and the proof and the evidence? Here, the uncontradicted evidence put aside to the statute of limitations question or any other claim they could have brought, it exceeds $5 million. The plaintiff never conceded that. Sotomayor, is there a difference between what you're advocating and the approach that's now taken in the general removal statute, as it's been amended recently,  So there, as I read it, the amount demanded in the complaint is not necessarily controlling. The case can be removed, even if the amount demanded in the complaint is below the jurisdictional threshold, and then the defendant can prove that the real amount involved exceeds the jurisdictional threshold. That's exactly right, Your Honor. There's greater leeway under CAFA, because under 1332a and 1446, there are certain standards that need to be met to allow the defendant to put on proof. But that's how it's always been. The defendant can then put on evidence and say, this is the actual amount in controversy. And here, the only way the plaintiff got around it in the lower courts was to argue that the stipulation was binding, Justice Kagan. That was their argument below, and that's what the district court found. It found that the stipulation was binding on the class. Kagan. It's binding if the class is certified and the case proceeds to judgment. It's not binding on the absent class members prior to certification and prior to judgment. And that means that jurisdiction in the Federal courts exists, because we judge jurisdiction at the time of removal. And at the time of removal, there was no binding limitation on the recovery that could be obtained. Undisputed facts show that that exceeds $5 million when the claims of the individual class members are aggregated. I think I don't understand that, Mr. Boutrous, because what you have, given that this is a State which says that these stipulations are binding if it proceeds to, if there's certification and if it proceeds to judgment, you have a cap of $5 million. You cannot be charged more than $5 million under this State's law if this case ever gets to judgment. But the problem, Your Honor, again, and this isn't just me, this is what Congress said in its findings, and in the text, as you noted, it eliminated but the five pillars of restrictions on diversity jurisdiction, because in State courts, courts aren't applying Rule 23-like standards. They're not doing it in Miller County. They're not even allowing class certification to occur or to be heard, and instead this discovery is being taken. Here the limitations period is limited to two or the class period is limited to two years. The discovery that was served with the complaint goes back to 13 years. So. Alito, even if this case were handled on remand to the Arkansas Supreme Court, it's exactly like a Federal class action. I don't understand how absent class members would ever be able to determine whether, by failing to opt out, they had compromised part of their claim. I don't see how, even if they're notified that there's a $5 million cap, and I don't know that Rule 23 requires that, but suppose they're notified of that, they can't tell whether, by remaining a member of the class, their claim is going to be compromised at all. It would depend on lots of different things, including how many members are in the class after it's certified, and that's something they can't know. That's exactly right, Your Honor, and that's something page 3a of the addendum to our opening brief. Your concern is that the certification, if the certification would occur in the Federal court, that's one thing. But you're saying that the name plaintiff can't stand for the entire class when we know that the certification question, if the stipulation is binding to prevent removal, it's going to be the State court that's going to look into adequacy of representation on whether the stipulation binds all the members of the class. That's your whole concern. If the Federal court made that determination, I think it wouldn't be here. Well, that's what Congress was concerned about, too, Your Honor. It was concerned that the State courts weren't applying standards of uniformity in these net class actions that are affecting interstate commerce, and that Rule 23's protections and standards should apply. Well, Congress was concerned about suits of over $5 million.  Now, if it is a suit over $5 million, a State court is bound by the due process clause, and a State court is going to find, look, you're just giving these plaintiffs' claims away. We're not going to allow you to do that. You're not an adequate representative. On the other hand, in a case like this, where it's $5,024,000 and it only gets there because you've added on $1.5 million of legal fees, the court might very well say, you are an adequate representative. Go for it. Now, usually we don't question State court judgments of that kind. Why should we do so here? We don't have a State court judgment yet, Your Honor. And we judge the removal issues and the amount of controversy at the time of removal. And $5 million is $5 million. Congress drew the line there. And as Justice Alito was pointing out, the notices to the absent class members, that was Congress, I was about to say, 3A of the addendum to our blue brief. Those are the findings that Congress put into the public law, number or letter C, confusing notices are published that prevent individuals from exercising their legitimate rights and enforcing their legitimate claims. And it would be ironic in the extreme if in a ‑‑ where a statute was enacted to protect, and this is in the findings, the legitimate claims of absent class members, and to allow the cases to be in Federal court, if this Court were to hold that a named plaintiff who doesn't represent those people can come into court and say, we're not going to seek the full amount of those claims in order to keep the case out of Federal court, that would be totally contrary to Congress's intent. Roberts. Well, you're assuming that it's a bad thing for the class members to have their claims limited, but it may well be a good thing for them to have their claims limited if that gets them into what would reasonably be regarded as a more sympathetic forum. I'm not making a judgment on that point, Your Honor. It may or may not be. The plaintiff makes this point, maybe it's better to be in State court, but for removal purposes only. Going back to just the pure analysis, the question is, does the amount in controversy when the claims of the individual class members are aggregated exceed $5 million? It's undisputed that that's true. The only basis for saying it doesn't exceed that amount is the stipulation, which everyone now agrees has no binding effect whatsoever. The plaintiffs also argue, concede in their brief that— Kagan. You have to be careful about two different uses of the word binding. It has no binding effect right now on an absent class member. They can go out and bring their own suit. If the named plaintiff is found to be adequate and the suit goes forward and goes to judgment, then the stipulation does indeed have binding effect and you have not been exposed to more than $5 million. But the question, Your Honor, is, is it binding in this case on anybody or anything other than Mr. Knowles? It's binding — it is binding on everybody if there's a finding of adequate representation and if this goes forward as a class action, then it's binding and you haven't been exposed. Your Honor, again, under the jurisdictional approach, and Your Honor cited St. Paul, St. Paul says that if once the amount in controversy has been established to exceed the amount, here $5 million, it's on the burden of the party seeking to oust jurisdiction to show to a legal certainty that the amount will not go over $5 million. Your questions and the plaintiff's brief concede it could well go over $5 million if this class representative is found inadequate, if another person is appointed to be the class representative, and therefore there is Federal jurisdiction. That's the rule that plaintiffs say should apply. They don't even — he does not even try to suggest that it's legally impossible that the amount might go over $5 million, and that's the problem. It's going — it's an amount that is over $5 million. In these cases, it — the stipulation is meant to just keep the case in State court contrary to Congress's intent, and I will not do that. Ginsburg. What do you do to the language in 1332d-1d, the term class members means the person named or unnamed, who fall within the definition of the proposed class, the proposed class, and that's what we have here? That's what we're using, Your Honor, for our calculations, the proposed class, including the narrower time frame that we think is a manipulation, but nonetheless, we've used that and the amount exceeds $5 million. And if I could reserve the rest of my time, Your Honor, thank you. Roberts Thank you, counsel. Mr. Frederick. Frederick, thank you, Mr. Chief Justice, and may it please the Court. Our position is that the stipulation is binding throughout the, quote, ''civil action'' filed by the putative class representative. I want to focus the words on civil action, because there has been no civil action filed by any absent class members. The only civil action that the district court is being considered for jurisdiction is the civil action that has been filed by the putative class representative. So if the class is later not certified, the stipulation would only bind the putative class representative. If the class is certified. Kennedy Are you saying that 6 doesn't apply? Frederick No. Kennedy At this point, because a 6 talks about class action. And it says the duty of the district court is to aggregate the claims of the individual class members. Frederick And what 1332d1b does, Justice Kennedy, is define class action in terms of the civil action that was filed so long it was filed pursuant to Federal Rule 23 or an equivalent State statute. What the complaint here does in the prayer for relief and in paragraph 11 of the complaint is to say that this civil action is not going to be worth more than $5 million. Roberts And you, I assume you agree that if at the adequacy hearing, if there ever is one, and it's demonstrated that, well, in fact, the amount in controversy is $10 million, then you would be obviously not an adequate representative. Frederick Well, that would be one outcome that a State court could come to. A second outcome could be that at that point, if an alternate class member comes in and files an intervened complaint and says this case really is worth $10 million, at that point, section 1453b applies and they can remove to Federal court. Kagan And they can remove no matter when that happens, is that right, as a result of CAFA, because CAFA took off the 1-year limit? Frederick That's correct. Scalia Or the State court could find that, oh, yeah, the claim is worth a lot more than $5 million, but it's worth that amount to be in this generous court with these generous juries. And so you're really not harming these absent plaintiffs, because they ought to want to be here. We've got good juries and very favorable judges. Couldn't it find that? Frederick Well, what's very clear, Justice Scalia, is that Congress was not attempting to address the adequacy of class representation issue when it decided this statute and it enacted it. Scalia I understand that, but I'm just addressing your point, which you blindly say if the representation is inadequate, if indeed it's worth a lot more, that will be handled. Not necessarily. The State court could find, and I suspect this State court would find, that it's worth the money to be in State court. Frederick A putative class representative makes all kinds of strategic judgments about how best to maximize value for his clients and for the class. And that entails judgments about whether to assert various legal theories. Here, and, Mr. Chief Justice, this goes to your very first question, this complaint renounced a claim to punitive damages. But there are some cases out of the Tenth Circuit, the Frederick case, not associated with me, and in the Seventh Circuit, the Back Doctor's case, that say essentially if there is a claim for punitive damages, you have to make an estimate for amounting controversy purposes. As I understand their theory in, as they express it on page 11 of the reply brief, it's very uncertain as to a case like ours, where we've renounced a claim to punitive damages, whether or not a Federal district court is nonetheless supposed to take that into account. Roberts. What if you had a case where a lawyer brings an action in Miller County and says, I represent, I want to represent a class of people with these claims, these claims, whose names begin with A to K? It turns out that's $4 million. Then in the next county, at the same time, he files a case saying, I'd like to represent these people whose names begin from L to Z. And in each of those cases, it's $4 million. I take it you don't have any objection to that? Well, my objection would be at the class certification stage, Mr. Chief Justice, where the requisites of typicality, numerosity, the contrivances that are being done are going to whether or not those representatives are adequate. It does not speak to Federal jurisdiction. No, that's the same question. But is a counsel who proceeds on that basis, is there any reason to question his adequacy? Let's say he's fully representing, bringing all the claims and all the damages. He's just decided to break it up from A to K. Somebody from L is not going to say, well, he's inadequate, but he's representing him, just because he could have represented everybody in the other action. I misunderstood, Mr. Chief Justice. I think that for Federal jurisdiction purposes, the Court has always said that that kind of legal strategy is perfectly appropriate under the master of the complaint process. Well, if that's so, this is just a loophole, because it swallows up all of Congress's statute, which is what their problem is. All you have to do is, even if you're less obvious than the Chief Justice's example, what you do is you file a complaint. You say it's for $4,900,000. In fact, it's worth $10 million. But you inform people, unlike Justice Alito, you figure a way around his problem. You keep them informed. You say it's getting close, getting close. And once you're up to $4,800,000, the others get the word, stay out of it. And once they stay out of it, you go ahead with your action, and then those that have stayed out of it become the subject of a second action. And if it's for $50 million, then you have 10 actions, and then you have 20. So, in fact, all that's required is a few extra pieces of paper that will soon become standardized and a lot of postage stamps, and we have 30 or 40 or $50 million cases being tried in whatever counties Congress liked the least. I gather there's some in Arkansas. But that seemed to me all behind Justice Scalia's and the Chief Justice's questions, and I'd like to hear a pretty complete answer on that. Sotomayor, if you look at the report that went along with the statute, what Congress was most concerned about was the situation where each individual class member would not be able to exceed $75,000, but there might be a million of them. And so you might have a million class members, each of whom had a claim for $50,000, and there was no way to get that to Federal court because of the Zahn non-aggregating rule. Congress was not concerned about having the master of the complaint altered in this class process. And in fact, Congress rejected a proposal that would lower the amount in controversy for class actions to $2 million because the Congressional Budget Office said if you keep it at that low, virtually every class action will be in Federal court, and Congress has not appropriated additional funds for the Federal courts to deal with all of the class actions. Roberts. Roberts. You realize, of course, you're on pretty thin ice. You're talking about a Senate report, and now you're talking about proposals that weren't enacted. Your friend on the other side focuses on the statutory language, which tells you how to find out how much is at stake. And I'm telling you that his focus on the word claims is insufficient because there are no claims by absent members until there is a civil action that has been filed. And that is why, if you look at the definition of a class action, it is a civil action that is filed pursuant to one of those rules. Alito, under your argument, the amount that's demanded seems to be totally meaningless. Here, we are told that the real amount is only slightly above the $5 million figure, but I don't think that makes any difference. So let's say what was the – you stipulate you're not going to get more than $5 million, but really the value of the claims is $50 million. And you say that's perfectly okay. It will be dealt with later when the case is – after the case has been remanded to the State courts. Isn't that right? So the $5 million is just – means nothing. No, the $5 million doesn't mean in practical terms. Well, Justice Alito, it means we have to determine, and a district court has to determine whether or not the $5 million has been satisfied on the basis of the well-pleaded complaint and an aggregation where, as a factual matter and as a stipulated matter in paragraph 11 of the complaint, the class representative here said this case is not worth more than $5 million. And we know that that's true because even under their estimate of all of the class members in the State of Arkansas, the damages only equal about $3 million. And so the real amount is a little bit over $5 million. Suppose the real amount is $6 million, $7 million, $8 million. Does it matter where along that continuum the real amount falls? Not so long as there is a binding stipulation that says so long as this civil action is in place, it is not going to be worth $5 million. Now, I'm not binding on that. Breyer, this is in response. We're on the same subject, and I'm drawing the conclusion from what you say, that, yes, we found a way around this. And what we're going to do is we will divide our $25 million class action into 6 subsidiary actions and proceed exactly the same merry way. And we do that by the means of stipulation. Now, your words in the statute do favor that, in my opinion, at the moment. But the purpose seems to strongly cut the other way. And I do see a way to go the other way in that you could say, given the purpose of this, the words do mean something different, and they do mean you should aggregate the real value of the real amounts that the class is likely to have. Now, it's capable of that reading, and the virtue of that reading is that it would stop what looks like, from what you're saying, a mechanical method of avoiding the purpose of the statute. I say that explicitly because I really want to make as much as possible that you will focus then on what's the response to that. Yes. Well, Justice Breyer, Congress could have addressed any number of those kinds of issues with the specific terms that it used. But the well-pleaded complaint rule and the master of the complaint rule is a very subtle part of our diversity jurisdiction. And that is so because we want these jurisdictional inquiries to be simple, not complicated. Under their approach, they would take all the conceivable legal theories that might be brought over a conceivable period of time, and ask the district court to make very nuanced judgments about what you're saying. Well, but what you're saying in your answer to Justice Breyer, and I don't think you've really addressed his point that the statute, number 6, says shall aggregate the individual claim, what you're saying is that the simplest thing is to evade the statute. Evasion is simple, and therefore, we still use that approach because the simplest is the best. That just is not responsive to his question. Well, Justice Kennedy, let me try it this way, which is that for the large case, the one that I gave in my hypothetical where there are a million class members and each of them has a claim of $50,000, we know prior to CAFA that case was staying in State court because of this Court's Zahn rule. But that might be a nationwide case. It might be worth hundreds of millions of dollars in damages. That was the kind of problem that Congress was trying to get at. But the case where there's a stipulation that actually might be meaningful, where the amount in controversy is debatable as to whether it's really $5 million, that's the kind of case where jurisdictional simplicity ought to encourage. Ginsburg. But your theory doesn't depend upon it being just a little over $5 million. Your theory would hold whether it was $8 million, $9 million. That's correct, because, Justice Ginsburg, I'm sorry to interrupt you, but that's precisely because we want the ability to make legal judgments and strategies to reside in the person who's bringing the complaint. We don't want. Even though you admit in your brief, you agreed, that the stipulation, I think this is what you said on page 53, the stipulation can have no effect on absentees until the Court finds at the certification stage that the stipulation was made in good faith and doesn't render the name plaintiff an inadequate representative. But we have to judge removal at the time removal is made, and at that time there is no determination of class. So at the removal stage, the stipulation is inoperative as to the non-named class members. Not where there are allegations about what the aggregated damages are about. That's why, to address this in the language of the civil action, those absent class members haven't filed any lawsuit. We don't really know what claims they might conceivably bring if they were to be hypothesized. What we do know is that there is a civil action. It has been filed by a putative class representative. That putative class representative, in good faith, the district court found, had acted in good faith in stipulating to a lower amount than $5 million. And the question is, should that be given legal effect, where everybody knows that it will be binding if the class is certified and it will be binding on the class representative if the class is not certified. Alito, suppose this were an individual action and the amount is, the amount that's pled, an individual diversity action, the amount that's pled is under $75,000. The defendant still can remove the case and prove that the amount is really higher than that because the practice of the State in question is to allow a recovery that's over $75,000. So why shouldn't the same approach apply here? Well, you're referring to a statute, Justice Alito, that was recently enacted in which it does say that the presumption shall be that the amount pleaded in the complaint subject to disproval. But that's reversing two, well, 100-plus years of settled removal law after the reforms of the 1870s created the removal jurisdiction the way it is more currently constructed. And so in that interregnum between the 1870s and that statute passed just a couple of years ago, the rule was well settled that the individual case pleading amount was fine. And under St. Paul Mercury, if there was a stipulation that had been filed contemporaneously with the complaint or prior to removal, that that would be given legal effect. Here, the stipulation was filed with the complaint. There's no doubt that this was done in good faith. The district court found that, and I don't think that's really an even arguable proposition here where they're asserting a 40 percent attorney's fee on this. And so really the question is, where you have an aggregated estimate, should that be given legal effect? Alito, wouldn't it be perverse if the rule were that in an individual action where the plaintiff is simply stipulating how much he or she is demanding individually which the person can do, it's possible to look behind that number? But in a class action where the named plaintiff is purporting to make a stipulation on behalf of absent class members as to whom the named plaintiff at that point has absolutely no authority, you can't look behind the number. Well, as a policy matter, we might have a debate about the various virtues of that, but they were not enacted in the same piece of legislation. And so what we do know is that for CAFA, Congress had not adopted the rule that you're positing. Nonetheless, we do not attempt to argue that they have no basis for making arguments about amount of controversy when they remove, but it is subject to the rule that a binding stipulation shall be giving binding effect in the civil action that has been filed. And if that is later proved to be inadequate.  Ginsburg. When you said in your brief, it doesn't bind the non-named class members. Justice Ginsburg, this is important that you and I understand each other on this point, because it is binding in the civil action filed for all purposes. So whoever is covered by that civil action will forever be bound by the $5 million stipulation. What we do not know is who will be members of that class until the certification hearing is done. Whoever ends up being covered by that civil action will forever be bound by that stipulation. That is what the district court knows. Kagan. Kagan. Can I ask you this? Because I've been trying to figure out exactly what Mr. Boutros is concerned about. And one thing he might be concerned about is that, notwithstanding that the class has really claims for $20 million, the thing is going to be certified for $5 million, and all these absent class members are being deprived of something meaningful to them. But that's something which, you know, usually we assume that State court judges will do their jobs, will pay attention to the Constitution, will apply adequacy of representation standards that come from the Due Process Clause. So that seems like a strange thing to worry about in interpreting this Federal statute. The other possibility is he might be worried that this stipulation won't be really as binding as you say. That in a case in which there is an adequacy of representation determination made, the class goes forward, and then things work out, and it really looks like all these absent class members are going to get, you know, badly treated. He's going to tear the stipulation up or do something like that. And it's going to be way down the line, and why should we allow that to happen? Well, for two reasons, because there are protections that are in the statute that protect both defendants and absent class members. And the protection for the absent class members is that if that stipulation is insufficient to adequately represent their interests, the district court, the trial court, and the State court will not certify the class. But this is a – he's done the certification. Now it turns out that the certification was wrong, that in fact this – these claims are worth a good deal more. And he says, I can't in good faith allow all these people's claims to be adjudicated for this amount of money when I know they're worth five times as much. And as a matter of judicial estoppel, what is absolutely clear in every State that I'm familiar with is that it follows this Court's basic formula in New Hampshire v. Maine, which looks at whether or not a change in position would prejudice the interests of the other party if the Court had relied on the original position of the litigant, and that will stop that person. Now, it may well be that there are due process issues associated with class representative, and the adequacy of a class representative is a continuing concern throughout a litigation precisely because of due process concerns. Roberts. Another thing he might be worried about is that if this action is allowed to proceed, although on its face it's worth $4 million, they're going to have to make a determination whether to settle for a particular amount or not. And if they make a determination that they've got to settle for whatever it is, $20 per class member, that is going to set the limit for other classes, including the class members who opt out of this action, the class members from Missouri. And the point is that, for a variety of reasons, that this gives extraordinary leverage to the individual class representative of a sort that — precisely the sort that Congress was worried about. Actually, I think, Mr. Chief Justice, with all due respect, that economic incentives are completely reversed, because if a class representative is bound by a stipulation that this case is not worth more than $5 million, the bidding starts at $5 million, but it goes down. It doesn't go north, because the defendant knows that no matter whether we go to trial or not, that this case, this civil action is only going to be worth $5 million. It's going to be worth a lot more, because if you go to trial, you're going to have a judgment that they should have been giving the general contractor whatever pickup it is. And so that is going to be extremely valuable. It's going to be worth a lot more. The downside is going to be a lot more than $5 million. Well, certainly, Mr. Chief Justice, Congress could have drafted a statute that allowed for the removal of every State class action and dealt with that issue if it was deemed appropriate to have Federal courts decide all class actions, but that wasn't the statute that Congress enacted. And Congress also could have expressed concerns and difficulty with this idea of having the master of the complaint rule applied in the class action context, but it didn't address that either. And so when Congress is only addressing a very narrow problem of dealing with the non-aggregation principles so that class actions that were worth more than $5 million would be allowed to be removed to Federal court, I don't think it would be appropriate for the Court to try to infer a larger set of. Roberts, One reason it's very difficult to speculate about Congress, what they speculate about what they would have intended. Presumably, they may not have thought about the idea that there will be class actions worth a lot more than $5 million, but the plaintiff's lawyer will only ask for less than $5 million. Well, these kinds of stipulations are well known, and, in fact, as we quote on, I think it's page 5 of our brief, Congress was aware of factual stipulations. They concede in their reply brief that it's perfectly fine for there to be a joint stipulation between the putative class representative and the defendants, and yet I would think that that would raise even more problems and concerns by you, because that would lead to the kind of collusion between a putative class representative and the defendant without knowing what the other interests of the absent class members are. And so here, where a good-faith effort is made to quantify the aggregate claims and that good-faith effort leads to the stipulation that the case will not be worth more than $5 million, the interest of jurisdictional simplicity, the interest of fairness to the class members, the interest of understanding what the civil action is all about so that the defendant is on notice about what will be claimed in this civil action are all things that should be given respect. Breyer. What about if anyone thought of this? I hate to bring up a sort of new idea, but somebody may have thought of it. Imagine we are now in the Federal District Court, and the Federal District Court reads this statute because the case has just been removed, and he says, you know, this case would be worth a lot more than $5 million were it not for that stipulation. And now let me look at that stipulation. That stipulation is a part of some, let's call it, quote, monkey business, end quote, which you will resist that. But I mean by that to encompass the kinds of things we have been talking about, that there are going to be five similar class actions, that they are going to take the people A through K, that they are going to do anything like that. And he says that's not under this statute the kind of stipulation that Congress meant to bar my consideration of the $5 million. So if it's a manipulative stipulation, whatever that might be, it doesn't bar me as a district judge from aggregating up to beyond $5 million. But if it's not manipulative, fine. Has there been any thought on that kind of thing? Well, there are two tools that we describe in our brief and that I think are reasonable ways that Federal courts address these matters. One is to look at whether or not it violates Rule 11, and there are – there's a frivolous assertion of a stipulation, which Federal district judges deal with Rule 11 motions all the time. The second is the concept of good faith, which is what St. Paul Mercury addressed when it said that a stipulation for less than the jurisdictional amount, if made in good faith, is something that will be treated as dispositive for jurisdictional purposes. Ginsburg. Justice Breyer's hypothetical would not come up on your theory, because the Federal court would never get the chance to make that determination. It would be made in the State court. No. If I'm understanding Justice Breyer's hypothetical, it's at the amount of controversy stage, and so there is litigation at that stage, and the defendant presumably would bring to the judge's attention, I think this is being done in bad faith, and I have these arguments for why this is deceiving, deceitful, misleading, et cetera. Who would do that? Ginsburg. Would that include the I'm suing for 2 years when I could have sued for 5? No, I don't think so, because there are lots of tactical reasons why litigants might want to limit their claims or might have a good faith basis for saying, I've only investigated this time period, I do not have a good faith basis for asserting claims in a different time period that I have not investigated. Breyer. But there might be ways of working with this notion, a little risky from your point of view, but there might be ways of working with this good faith notion so that some, there would be some power in the Federal district court to set aside certain stipulations which were used for manipulative purposes, and what the definition of that manipulative is, is something that isn't clear to me at the moment. The notion that I have distilled from St. Paul Mercury and the idea of good faith and looking at cases that have addressed bad faith, which is obviously the converse of good faith, is whether or not there is something misleading or deceitful in the way that the stipulation would be framed. And I think that that is as good a guidance as I can give you absent briefing. Sotomayor, it would never involve a judgment that a claim is really worth $50 million, and just to defeat this statute, it's being limited to 5. There could be a strategic reason, Justice Sotomayor, why. Sotomayor, the only strategic reason, according to your adversary, is they want to stay in State court. Well, but there are reasons, because in Arkansas, for instance, there is a direct appeal to the State supreme court. We could finish this case in many fewer years than it would take to wind its way up through the Eighth Circuit and up to this Court. That is one salutary reason. The second is we are talking about State law claims that are breach of contract claims for a State-regulated industry. The State insurance board would be looking at how State insurance is done here. So there are very good reasons why a lawyer would want this case to be in State court and not want it to be removed to Federal court, wholly apart from the ad hominem attacks that they make about Miller County, which were not brought to Congress's attention and, in fact, are false, as we have put into amicus briefs. It is false. The arguments that they talk about abuse involve all cases that predated CAFA. What this does is. Roberts Because these are Texarkana lawyers who filed on behalf of all Arkansas residents, and Texarkana, Arkansas, is a jurisdiction in Arkansas. Sotomayor, your answer just doesn't deal with the component that's been troubling, which is that it doesn't protect the absent class members in situations like the one that Justice Alito or the point Justice Alito made, which is they don't really know how much the entire quantity of the class might truly be, and who's protecting them if we go your way? Frederick Sure. In his hypothetical, that's true under Federal rules, too. If you're applying Federal Rule 23 and you have a large number of class members and the case gets settled for X dollars, the individual class member is held to the duty of deciding whether to opt out, because that individual class member thinks I may have been able to get more than what is being offered in this class settlement, or to attack the adequacy of the representation because the aggregate amount is not high enough. It's a problem that applies in both Federal and in State court. It's not unique to State court at all. If the Court has no further questions, we'll submit. Roberts Thank you, counsel. Mr. Guthrie, you have four minutes. Mr. Guthrie Thank you, Your Honor. Let me just start with the concerns that I have, and I think they're best expressed and encapsulated in two of the Friend of the Court briefs, the Manufactured Housing Institute brief and the Twenty-First Century brief. They explain what has been happening in Millard County. It's not speedy justice. It takes five or six years to get a hearing on anything, and then there's no hearing even on class certification. And that's why, Justice Kagan, it's cold, cold comfort to say maybe someday the Court will find this is an inadequate class member or class representative. It does not solve the problem that Congress sought to address. With respect to Mr. Frederick's suggestion that the stipulation is binding in this case forever and all time on anybody who's in the case, his own brief on page 41 says it might well be that another class representative might get appointed and the stipulation might be invalidated because it's an unfair stipulation and not valid for the class. That new class representative could come in and say we're not going to be bound by this $5 million number. That's not the amount in controversy. Sotomayor So why can't the case be removed at that moment? Mr. Guthrie Well, it theoretically could be, Your Honor, but that won't solve the problem of discovery, and it may very well be that there is a significant one, I don't know. But when you look at CAFA, I mean, CAFA did a lot of things, and it did not address this problem that you have of discovery. There could be, I could give you, you know, 10 different proposals that would enable you to bypass expense of discovery, but CAFA didn't do any of them. And this is a kind of jerry-rigged solution to get at a problem that comes from the Congress, in fact, did not address. Mr. Guthrie That's incorrect, Your Honor. First, Congress knew what was going on in the State courts and wanted swift removal in a simple way for defendants to protect defendants and absent class members because it knew what was going on, that there wasn't these protections. The Federal rules provide protection against discovery. This Court in Twomley said one of the reasons this speedy motion to dismiss in a strong standard is necessary is to avoid discovery that's burdensome, that coerces settlements that don't relate to the merits. So Congress knew it was bringing cases into the Federal system for precisely that reason. And on this master of the complaint point, Mr. Frederick is simply incorrect on this point. St. Paul wasn't a master of the complaint case. It said a plaintiff can limit the amount he wants to seek. The master of the complaint doctrine has never, ever been applied by this Court where an unappointed, named plaintiff who's not been appointed to represent people seeks to try to alter the claims and judgments of other people and the rights of them to recover. It's usually been applied in the arising under context where the Court has said if a plaintiff just wants to bring a State claim, they can't. We're not going to force them to bring a Federal claim. Kagan, Mr. Boutrous, the idea of the master of the complaint is inherent in every class litigation, because there could be no class actions, there could be no definition of anything, of the claims, of the amount of damages, of the number of defendants, of the amount of time, unless the plaintiff, the named plaintiff, had some ability to define the claim. And this is just one aspect of that larger power. Your Honor, on the amount in controversy, this Court has never held in a class action or otherwise that that's something that's subject to the well-pleaded complaint rule or the master of the complaint doctrine. The Court in the Hertz case and in the McNutt case, which it cites, said the Court should look past what the pleadings say. Okay. Then you really are asking us to blow up the whole world of claims. No, Your Honor. Because you're saying next time we'll be back and tell you that the named plaintiff can't define the claims. Next time we're going to be back and tell you that they can't name the defendants. No, Your Honor. May I answer, Your Honor? We're asking the Court to apply the same rules on this score that the Court has always applied, that when the complaint claims one amount, the defendant can bring forth proof that it's a larger amount, that it exceeds the amount in controversy, and the Court looks at the competent proof. That's the language the Court used in the Hertz case to determine the actual amount in controversy, not some jerry-rigged amount the plaintiffs came up with. Thank you. Roberts. Thank you, counsel. The case is submitted.